# Exhibit C



**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ~~COLUMBIA~~NEW JERSEY**

----------------------------------------------------------------- x
                                                                  :
ALLISON DAWN BLIXT and ~~L~~          :
~~A▮▮▮▮ Z▮▮▮▮ B▮▮▮~~,L. Z.-B.,        :     [PROPOSED] FIRST AMENDED
                                      :     COMPLAINT
               Plaintiffs,            :
                                      :     Docket No. ~~18~~2:20-CV-
         v.                           :     ~~—————~~02102-KM-JBC
                                      :
THE UNITED STATES DEPARTMENT OF STATE, :    Hon. Kevin McNulty
and THE HONORABLE ~~REX~~MICHAEL ~~W~~R. :
~~TILLERSON~~POMPEO, Secretary of State, :
                                      :
               Defendants.            :
                                      :
----------------------------------------------------------------- x

**PRELIMINARY STATEMENT**

1.      This action challenges a United States Department of State ("State Department") policy that hurts families and undermines the familial relationships of same-sex parents.  The agency's policy unconstitutionally disregards the dignity and sanctity of same-sex marriages by refusing to recognize the birthright citizenship of the children of married same-sex couples.  Plaintiffs are members of a family who have suffered and continue to suffer harm because of the State Department's policy.  The family includes: Allison Dawn Blixt ("Allison"), a United States citizen who was born and raised in this country; Allison's wife, Stefania Zaccari ("Stefania"), an Italian citizen; and their two young sons, ~~L▮▮▮ A▮▮▮ Z▮▮▮ B▮▮ ("L▮▮") and M▮▮▮▮ A▮ Z▮▮▮ B▮▮ ("M▮▮")~~L. Z.-B. and M. Z.-B.

2.      Both ~~L▮▮~~L. Z.-B. and ~~M▮▮~~M. Z.-B. were conceived and born in London, England during Allison's marriage to Stefania.  Allison and Stefania conceived their children using their own eggs and sperm from an unknown donor.  Stefania conceived and carried ~~L▮▮~~L. Z.-B. to term.  Allison conceived and carried ~~M▮▮~~M. Z.-B. to term.  Allison and Stefania are the only

parents listed on ~~L~~ L. Z.-B.'s and ~~M~~ M. Z.-B.'s birth certificates, and are the only people English law[1] recognizes as_ L. ~~L~~ Z.-B. and ~~M~~ M. Z.-B.'s parents.  Accordingly, Allison and Stefania have been ~~the boys~~their   children's legal parents from the day they came into this world~~together~~.

3.        At birth, both ~~L~~ L. Z.-B. and ~~M~~ M. Z.-B. qualified for United States citizenship pursuant to Section 301(g) of the Immigration and Nationality Act ("INA") (codified at 8 U.S.C. § 1401(g)).  That clause entitles a person born abroad to citizenship at birth if one of that person's married parents is a United States citizen and the other is a foreign national, as long as the citizen parent satisfies certain statutorily prescribed periods of residency in the ~~U.S~~United States.  Allison is a U.S. citizen who lived in the United States for over twenty years, and so clearly satisfies the residency requirements of Section 301(g).  Because Allison and Stefania were married to each other when ~~L~~ L. Z.-B. and ~~M~~ M. Z.-B. were born, ~~L~~ L. Z.-B. and ~~M~~ M. Z.-B. have been U.S. citizens since birth under Section 301(g).

4.        The State Department, through the United States Embassy in London, however, failed to apply Section 301(g) to ~~L~~ L. Z.-B. and ~~M~~ M. Z.-B.  Instead, it applied Section 309 of the INA (codified at 8 U.S.C. § 1409), a provision of the statute which applies only to children born "out of wedlock."  Because the State Department~~therefore~~ wrongly considered them to have been born "out of wedlock," it concluded that they could qualify for citizenship at birth only as the children of unwed parents, and therefore could acquire such citizenship only pursuant to Section 309 and only if Allison gave birth to them both.

---

[1]        To the extent necessary to introduce or address issues of non-U.S. law in connection with this action, this hereby constitutes Plaintiffs' notice pursuant to Federal Rule Civil Procedure 44.1 of reliance on foreign law.

5.      Focusing improperly on the biological relationship between each child and the parent who conceived and carried him, the State Department then recognized M███ M. Z.-B.'s citizenship and denied L███ L. Z.-B.'s.  The State Department's application of Section 309 instead of Section 301 is an unlawful, unconstitutional refusal to recognize the validity of Allison's and Stefania's marriage and, therefore, that a child born to them during that marriage is the offspring of that marriage.  The fact that the State Department's policy has led children identified by their birth certificates as boys with the same parents to have different nationalities listed on their passports crystallizes both the indignity and absurdity of the policy's effect.

6.      The State Department's failure to recognize and give effect to the marriage between Allison and Stefania also denies L███ L. Z.-B. the rights and privileges that accompany U.S. citizenship, including the right to reside permanently in the United States as a U.S. citizen, the right to obtain a U.S. passport, and, when he is older, the right to run for political office.  Because the State Department does not recognize L███ L. Z.-B.'s U.S. citizenship, he cannot visit or live in the United States freely on the same terms as other members of his family can.

7.      Allison and M███   may reside in the U.S. permanently because they are U.S. citizens.  Stefania may reside in the U.S. permanently by obtaining a family-based immigrant visa based on her marriage to Allison.  The State Department's policy, however, renders L███  the only member of his family without the freedom to live in the U.S. permanently.The State Department's decision to withhold from L███ L. Z.-B. the same rights granted to his brother means that he will experience the indignity and stigma of unequal treatment imposed and endorsed by the U.S. government.  No governmental purpose could justify imposing these indignities on a child of a valid marriage or restricting a family's freedom to live together as a family  together.

3

8.      The State Department's policy is not only wrong and harmful, it is also contrary to the INA as well as the guarantees of due process and equal protection enshrined in the Fifth Amendment.  To the extent that the State Department's policy was adopted before the Supreme Court's recent precedents guaranteeing equality to married same-sex ~~married~~couples and their families, its continued enforcement violates ~~that precedent~~the law.  The Supreme Court has made clear that the Constitution requires that same-sex marriages receive the same legal effects and respect as opposite-sex marriages.  The State Department's policy, or at least its application to ~~L~~██ L. Z.-B., violates that mandate by restricting eligibility for citizenship under Section 301 of the INA solely to children whose parents are in opposite-sex marriages.  These violations create real and significant hardships for the Zaccari-Blixt family and others like them.  Soon, ~~L~~██ L. Z.-B. will be old enough to realize that the U.S. government views him as ~~an~~a ~~alien~~non-citizen with no enforceable connection to his mother or brother, and discriminates against him based on the sex and sexual orientation of his parents.

9.      The State Department's policy~~is arbitrary and capricious and~~ serves no rational, legitimate, or substantial government interest.  The State Department's policy drives apart families~~apart~~ by treating the children of the same married parents differently depending upon which mother bore the child.  The threat that this policy poses to family unity confirms that it is contrary to the legislative intent of the INA, which enshrines the preservation of the family unit as a paramount consideration.  Neither the INA nor the U.S. Constitution permits the State Department's unlawful policy to stand.

## THE PARTIES

10.     Plaintiff Allison is a ~~39~~41-year-old citizen of the United States.  She was born in Illinois, raised in North Carolina, and resided as an adult in New York~~, where she is registered to vote as a U.S. citizen living abroad~~.  She currently resides in Essex County, New Jersey.

4

11.     Plaintiff L███ L. Z.-B. is 25 years old.  He was born in London, England, where he resides resided with his parents Allison and Stefania and his younger brother, M███ M. Z.-B., until late 2019.  L. Z.-B. currently resides in Essex County, New Jersey, along with Allison, Stefania, and M. Z.-B.  L. Z.-B. was granted lawful permanent residence in the United States as of November 22, 2019.

12.     Allison brings this the above-captioned action ("Action") in her individual capacity and on behalf of her minor son L███ L. Z.-B.

13.     Allison and L. Z.-B. commenced this Action on January 22, 2018 with the filing of the Complaint in the United States District Court for the District of Columbia ("D.D.C.").   On February 13, 2019, that court appointed L. Z.-B.'s other parent, Stefania, to be L. Z.-B.'s guardian *ad litem* in the Action.  L. Z.-B. brings this Action by and through Stefania in her capacity as his guardian *ad litem*.

14.     13.Defendant the United States Department of State is a department of the government of the United States of America, whose headquarters office is located at the Department of State, 2201 C St. NW, Washington, D.C. 20520.  The State Department oversees all U.S. embassies and sets the policy U.S. embassy employees follow in determining whether to recognize the citizenship of the children of U.S. citizens.

15.     14.Defendant The Honorable Rex Tillerson Michael R. Pompeo is the Secretary of State, whose office is located at the Department of State, 2201 C St. NW, Washington, D.C. 20520, and is being sued in his official capacity.

## JURISDICTION AND VENUE

16.     15.This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

17.     16.This Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

18.    ~~17.~~This Court is authorized to issue a judgment and injunctive relief pursuant to 5 U.S.C. § 702.

19.    ~~18.~~Venue in this district is proper pursuant to 28 U.S.C. § 1391(e).

20.    This Court is authorized to make a *de novo* determination and judgment of citizenship pursuant to 8 U.S.C. § 1503(a).

## PROCEDURAL BACKGROUND

21.    On January 22, 2018, Allison and L. Z.-B. filed the Complaint against Defendants in the D.D.C.  Allison and L. Z.-B. filed the Action in the D.D.C. because they resided outside the United States at the time of the Action's commencement.  The Complaint asserted claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), the Due Process Clause of the Fifth Amendment, and the Equal Protection Clause of the Fifth Amendment.

22.    Defendants filed in the D.D.C. a *Motion to Dismiss for Lack of Subject Matter Jurisdiction, and Failure to State a Claim Upon Which Relief Can Be Granted* ("Motion to Dismiss") on September 3, 2018.  On May 15, 2019, following a court conference on that date, the court denied in full Defendants' Motion to Dismiss.

23.    In late 2019, Plaintiffs relocated from London, England to Essex County, New Jersey.  Because of this development, on February 13, 2020, Plaintiffs and Defendants filed in the D.D.C. a *Joint Motion For Transfer Pursuant to 28 U.S.C. § 1404(a)* ("Transfer Motion") primarily to enable Plaintiffs to seek to file the first amended complaint.  On February 14, 2020, the court in the D.D.C. granted the Transfer Motion and ordered the transfer of the Action to this Court.

## STATUTORY AND REGULATORY BACKGROUND

### A.  United States Citizenship at Birth

24.  ~~19.~~There are two pathways to become a United States citizen at birth:  one pursuant to the Constitution and another by statute, the INA.  The "Citizenship Clause" of the Fourteenth Amendment of the Constitution provides, in part, that anyone born in the United States is a citizen at birth.  Under the INA, persons born outside the United States may be considered citizens at birth under certain statutorily prescribed circumstances.  If a person born outside the United States does not acquire citizenship at birth, that person can acquire citizenship only through naturalization, and therefore can never be eligible for the presidency as are birthright citizens~~are~~.

25.  ~~20.~~The provisions governing eligibility for U.S. citizenship at birth by individuals born outside the United States are set forth in Sections 301 through 309 of the INA.  Section 301 is titled "Nationals and citizens of United States at birth."  Under Section 301(g), babies born abroad are U.S. citizens at birth when (1) one of the child's parents is a married United States citizen and (2) the U.S. citizen parent lived in the U.S. for at least five years, at least two of which were after the parent's fourteenth birthday.

26.  ~~21.~~Section 309 is titled "Children born out of wedlock," and its provisions explicitly apply only to a person "born out of wedlock."  The requirements for citizenship at birth under that provision differ substantially from those in Section 301, which has long been regarded as applicable to anyone whose parents were lawfully married when the child was born.  For unwed mothers, subsection 309(c) specifies, in part, that:

> a person born . . . outside the United States and out of wedlock shall be held to have acquired at birth the nationality status of his mother, if the mother had the nationality of the United States at the time of such person's birth . . . .

27.  ~~22.~~As a result of the different requirements for the children of wed and unwed U.S. citizens, it is possible for a person to qualify for citizenship at birth under Section 301 even if the

person does not qualify under Section 309.  Thus, the determination of whether a child is born in or out of wedlock can be dispositive of the ultimate question of whether or not a child acquired U.S. citizenship at birth.

28. ~~23.~~Since its enactment in 1952, the INA has neither included nor been amended to include definitions of the terms "parent," and "person," as used in Section 301, or the terms "mother," "father," and "out of wedlock," as used in Section 309.

29. ~~24.~~Before and after the enactment of the INA, the majority of U.S. states have followed the common law in presuming that every child born in wedlock is the legitimate offspring of the child's married parents.  That presumption applies even when only one spouse is the child's biological parent.  The structure of the INA effectively codifies the common law presumption of parentage for married couples by making Section 301 applicable to any person except for children who are  born "out of wedlock."

**B.     The History of Sex-Based Discrimination as to Citizenship Rights**

30. ~~25.~~The first citizenship law of the United States denied women any individual right to citizenship, let alone any right to transmit citizenship independently to their children.  A woman who married would lose whatever citizenship she held prior to marriage, automatically and necessarily becoming a citizen of her husband's country, as would any children she conceived and carried while married.

31. ~~26.~~Because women had no independent right to transmit citizenship to their children, unmarried women could not transmit citizenship to children they conceived and carried.  Because unmarried women had no husbands, these children had no parent from whom they could derive citizenship, and therefore had no nationality or citizenship status at all.  In light of the

hardships suffered by such children, Congress amended the immigration laws to provide citizenship for the children of unwed U.S. citizens.

32.    27. When Congress enacted the INA in 1952, it used the sex-neutral word "parent" in the provision governing the acquisition of U.S. citizenship at birth by children born abroad in wedlock, ensuring equal treatment of married men and married women and of the children born during their marriage.  By contrast, Congress imposed different requirements on children born out of wedlock based on whether their U.S. citizen parent was an unwed mother or unwed father.

33.    28. The Supreme Court has approved of applying different requirements to the children of unwed mothers and fathers for purposes of acquiring U.S. citizenship under Section 309.  According to the Court, pregnancy—by nature and duration—ensures a child and mother have the requisite connection for the mother to transmit citizenship to her child at birth, while an unwed father—by nature of not being married to the child's mother—may be asked to do more to ensure he is sufficiently connected to a child he may never even meet or have anything to do with beyond his role in the child's conception.

34.    29. The Supreme Court has rejected the application of different requirements, however, for eligibility for U.S. citizenship at birth of children of unwed fathers and mothers when those requirements have no relationship to—and therefore cannot be justified on the basis of—the biological differences between the sexes associated with pregnancy and childbirth.  Thus, for example, federal law cannot require an unwed father to live in the United States for a longer period of time than an unwed mother before conferring citizenship on his child.

35.    30. Congress has made clear that the legislative intent behind the INA should be construed liberally because the INA was designed to make it easier—not harder—for families of citizens and non-citizens to stay together.  According to Congress, "the legislative history of the

Immigration and Nationality Act clearly indicates that the Congress intended to provide for a liberal treatment of children and was concerned with the problem of keeping families of United States Citizens and Immigrants united." H.R. Rep. 85-1199, at 2020 (1957). Congress has also declared that "the statutory language makes it clear that the underlying intent [is] to preserve the family unit upon immigration to the United States." *Id.*

36. ~~31.~~In amending the INA, Congress recognized that the hardships faced by families fractured along citizenship lines were overwhelmingly greater than any harm that could come from the liberal treatment of children with respect to citizenship.

## C.     The Constitutional Rights of Same-Sex Couples

37. ~~32.~~As the Supreme Court has recognized, same-sex couples have long been subjected to illegal institutional discrimination and social stigmatization. The Supreme Court's precedent makes clear that the Constitution compels equal protection and recognition of, and respect for, the rights of same-sex spouses, including their right to have autonomy over the most personal and intimate of choices—decisions about starting a family and sustaining a partnership in which to raise and nurture a child. Accordingly, the State Department must recognize the "equal dignity of same-sex marriages." *United States* v. *Windsor*, 133 S. Ct. 2675, 2693 (2013).

38. ~~33.~~After *Windsor* ~~overturned~~invalidated the statute excluding same-sex marriages from federal recognition, the federal government announced that it would recognize same-sex marriages for immigration purposes. *See* Statement from Homeland Security Secretary Janet Napolitano on July 1, 2013, available at https://www.uscis.gov/family/same-sex-marriages ("As a general matter, the law of the place where the marriage was celebrated determines whether the marriage is legally valid for immigration purposes. Just as [the United States Citizenship and

Immigration Services] applies all relevant laws to determine the validity of an opposite-sex marriage, we will apply all relevant laws to determine the validity of a same-sex marriage.").

39. ~~34.~~Following *Windsor*, the Supreme Court overturned state laws that barred same-sex couples from marrying as inconsistent with the Constitution's guarantees of due process and equal protection, including rights central to an individual's autonomy and dignity, such as one's choice of intimate life partner. *Obergefell* v. *Hodges*, 135 S. Ct. 2584 (2015).

40. ~~35.~~The Court further warned that failure to recognize same-sex marriages "harm[s] and humiliate[s] the children of same-sex couples." *Id.* at 2590. The Court also recognized that "[w]ithout the recognition, stability, and predictability marriage offers, children suffer the stigma of knowing their families are somehow lesser." *Id.*

41. ~~36.~~In *Pavan* v. *Nathaniel Smith*, the Supreme Court held that married couples must receive the same "constellation of benefits . . . linked to marriage," regardless of whether the marriage is between spouses of the same or opposite sexes. 137 S. Ct. 2075, 2077 (2017). Those benefits include the legal recognition that same-sex spouses may both be the parents of a child born during their marriage, even if only one spouse is the child's biological parent.

### D.   The State Department's Restrictive Classification of Eligible Children

42. ~~37.~~The INA does not define or limit the class of persons born in wedlock who are eligible for citizenship at birth pursuant to Section 301. Nevertheless, the State Department is restricting the class to exclude all or nearly all children of married same-sex~~married~~ couples.

43. ~~38.~~The State Department has imposed that policy by inserting a definition of terms into an Appendix to the Foreign Affairs Manual ("FAM"), available at https://fam.state.gov/. Specifically, 1140 Appendix E of the FAM, titled "'IN WEDLOCK' AND 'OUT OF WEDLOCK,'" includes subsection (c), which states that "[t]o say a child was born 'in wedlock'

means that the child's biological parents were married to each other at the time of the birth of the child."  (A copy of the relevant portion of the appendix is appended to this Complaint at Exhibit A.)

44.   ~~39.~~1140 Appendix E of the FAM has never been submitted to notice and comment rulemaking.  However, it forms the basis for the State Department's conclusion that the children were born out of wedlock.

45.   ~~40. That definition has the effect~~The State Department's policy of limiting birthright citizenship to children who are biologically related to a U.S. citizen parent~~, which~~ has been rejected by the United States ~~Court~~Courts of Appeals for the Second and Ninth ~~Circuit has rejected~~Circuits in ~~two~~three separate decisions.  *See Jaen* v. *Sessions*, 899 F.3d 182 (2d Cir. 2018); *Solis-Espinoza* v. *Gonzales*, 401 F.3d 1090 (9th Cir. 2005)~~(citing~~; *Scales* v. *INS*, 232 F.3d 1159, 1166 (9th Cir. 2000).  A district judge in the United States District Court for the Central District of California also recently rejected the State Department's policy in a closely analogous case.  *See Dvash-Banks* v. *Pompeo*, 2019 WL 911799 (C.D. Cal. Feb. 21, 2019), *appeal filed*, No. 19-55517 (9th Cir. Oct. 11, 2019).

### FACTUAL ALLEGATIONS

### A.   The Zaccari-Blixt Family

46.   ~~41.~~Allison is a U.S. citizen who was born, raised, and has lived as an adult in the United States.  Born in 1978 in Park Ridge, Illinois, Allison moved at age six with her family to Clemmons, North Carolina, where she lived until graduating from high school and moving to Poughkeepsie, New York to attend Vassar College.  Allison lived in the United States continuously from the time she was born in 1978 until 2008.

47.     42. After graduating from college, Allison spent a year and a half coaching college

field hockey at Hartwick College in Oneonta, New York, before returning to North Carolina to

attend law school.  In 2005, Allison received her law degree from the University of North Carolina,

and moved to New York City, where she began working as an associate at a law firm.

48.     43. Stefania is an Italian citizen, born in 1974 in Ferentino, Italy.  Allison and

Stefania met in 2006 when Stefania was visiting New York City on vacation.  At that time, Stefania

lived and worked in Rome, Italy, where she returned after her trip to New York ended.  Allison

and Stefania's relationship continued despite the distance.

49.     44. At the end of 2007, Stefania returned to New York, this time after a year of being

in a long-distance relationship with Allison.  Stefania stayed with Allison in New York for as  long

as she was legally permitted:  90 days.  During that time, the couple decided to take the next step

in their relationship and live together.

50.     45. Stefania was not eligible then to immigrate to the U.S. United States, nor could

she hope to become eligible if the two married:  at the time, the Defense of Marriage Act, 1 U.S.C.

§ 7, barred the federal government from providing immigration benefits on the basis of same-sex

marriages.

51.     46. As a citizen of Italy, a member state of the European Union, Stefania could live

and work freely in England.  As an employee of a law firm with a London office, Allison obtained

a transfer of her position to the firm's London office, allowing her to live and work there.  In 2008,

Stefania and Allison moved to London so that they could finally be together.

52.     47. In 2009, Allison and Stefania entered into a civil partnership in England.  On

January 3, 2015, they retroactively converted their civil partnership to a valid marriage following

the ~~legalization~~recognition of marriage for same-sex ~~marriage~~couples in England.  (A copy of Allison~~'s~~ and Stefania's marriage certificate is appended to this Complaint at Exhibit B.)[2]

53.   ~~48.~~In the ensuing years, Allison and Stefania decided to start a family and have children.  Given that Allison and Stefania are both women, they conceived children through the use of assisted reproductive technology.

54.   ~~49.~~In 2014, Stefania became pregnant using sperm from an unknown donor, and on ██████ 2015, gave birth to a baby boy.  Stefania Zaccari and Allison Blixt gave their son a name that would reflect their status as a married couple and family:  ~~L████~~ ~~A███████~~ ~~Z████~~ ~~B██~~L. Z.-B.  (A copy of ~~L████~~L. Z.-B.'s birth certificate is appended to this Complaint at Exhibit C.)

55.   ~~50.~~Allison and Stefania are ~~L████~~L. Z.-B.'s parents in all relevant respects.  They are ~~L████~~L. Z.-B.'s legal birth parents, and his birth certificate lists only Allison and Stefania as parents.  No one else has ever claimed to be or been declared to be his parent.  Allison and Stefania made the decision together to bring ~~L████~~L. Z.-B. into this world and into their family~~together~~, and have raised ~~L████~~L. Z.-B. together since the day he was born.  Under the law of ~~every residence Allison or L████ has ever had—New York, North Carolina, Illinois, and~~England—the jurisdiction in which L. Z.-B.'s parents resided at the time of L. Z.-B.'s birth, and the only jurisdiction relevant here—Allison is ~~L████~~L. Z.-B.'s legal parent.

56.   ~~51.~~After ~~L████~~L. Z.-B. was born, Allison and Stefania decided to have another child together.   In 2016, Allison became pregnant, using sperm from the same donor (whose identity is unknown) the couple had selected when conceiving ~~L████~~L. Z.-B.  On ██████████

---

[2]   References to L. Z.-B.'s full name, as well as other personal identifying information, have been redacted from Exhibits B through E to preserve L. Z.-B.'s privacy and the privacy of his family.

2017, Allison gave birth to a baby boy.  As they did for L██ L. Z.-B., the parents gave their

second child a name that would clearly indicate that his parents are Allison Blixt and Stefania

Zaccari: M██████ A███ Z██████ -B██ M. Z.-B.  Allison and Stefania are M██ M. Z.-B.'s legal

parents.  They—and they alone—are identified as M██ M. Z.-B.'s parents on his birth certificate

and have acted in all respects as his exclusive parents.

57.   52. L███ L Z.-B. and M██ M. Z.-B. are part of the same family, with the same

parents.  In terms of their relationship to Allison, the only distinction between them is that Allison's

wife conceived and carried L██ L. Z.-B. instead of Allison.  That distinction should make no

difference to L██ L. Z.-B.'s eligibility for U.S. citizenship at birth as a child demonstrably ***not***

born out of wedlock.  But to the State Department, this is all the difference in the world.

**B.     The Application of the State Department's Policy to the Zaccari-Blixt Family**

58.   53. After L██ L. Z.-B. was born in ████ 2015, Allison and Stefania appeared in

person at the U.S. Embassy in London to apply for a Consular Report of Birth Abroad and a U.S.

passport for L██ L. Z.-B.

59.   54. Notwithstanding Allison's citizenship, marriage, and status as L██ L. Z.-B.'s

legal parent, an Embassy official inquired into the details of L██ L. Z.-B.'s birth, asking how

Allison and Stefania had conceived L██ L. Z.-B., whose genetic material had been used to

conceive him, and in whose womb he had been carried.  These invasive questions were as shocking

as they were demeaning to Allison and her family.  The Embassy official did not explain how these

questions were relevant, if at all, to the question of whether L██ L. Z.-B. had been born in or out

of wedlock.

60.   55. After answering the official's questions, Allison was informed that it would be

futile to apply for a Consular Report of Birth Abroad for L██ L. Z.-B. unless Allison could prove

15

she had carried him or provided the egg used to conceive him.  Accordingly, Allison and Stefania

left the Embassy without submitting an application, heartbroken to learn that the U.S. government

would not recognize or give effect to their marriage or Allison's parentage.

61.    56.After M██ M. Z.-B. was born, Allison and Stefania returned to the Embassy on

May 23, 2017 to submit applications for Consular Reports of Birth Abroad and U.S. passportson

behalf of L██ L. Z.-B. and M██ M. Z.-B.  Again, Stefania and Allison were asked a series of

invasive and legally irrelevant questions about how their children were conceived and born.

Again, they were told that L██ L. Z.-B. would not be recognized as a citizen because of the lack

of a genetic or gestational relationship between him and Allison.  Stefania and Allison nonetheless

submitted the applications on behalf of both L██ L. Z.-B. and M██ M. Z.-B.

62.    57.In May 2017, Allison and Stefania received notice from the U.S. Embassy in

London that M██ M. Z.-B.'s application for a Consular Report of Birth Abroad for a U.S. passport

had been granted, but that L██ L. Z.-B.'s application had been denied.  According to a letter from

the Embassy, dated May 24, 2017 (the "Letter"), L██ L. Z.-B.'s application had been denied on

the ground that Section 309(c) of the INA required proof of L██ L. Z.-B.'s genetic parental or

gestational relationship to Allison regardless of his birth certificate and Allison and Stefania's

marriage.  (A copy of the Letter is appended to this Complaint at Exhibit D.)  Specifically, the

Letter read, in part:

> It has been determined that there is not a biological relationship be
> [sic] between the U.S. citizen mother and child, through either a
> genetic parental relationship or a gestational relationship, as
> required under the provisions of section 309(c) of the Immigration
> and Nationality Act.  Therefore, your application is denied.

(*Id.* at 1.)

63.    58.The Letter did not explain why the State Department or the Embassy considered

Section 309(c) applicable to L██ L. Z.-B., whose parents were lawfully married to each other at

16

the time of his birth.  The Letter did not refer to Section 301(g) or provide any legal authority supporting the refusal to recognize Allison's status as ~~L███~~L. Z.-B.'s mother or ~~L███~~L. Z.-B.'s status as a child born in wedlock.  The Letter also failed to identify any means through which its denial of ~~L███~~L. Z.-B.'s application could be challenged, appealed, or reviewed.  (*Id.*)

64.    ~~59.~~Because ~~L███~~L. Z.-B. was not granted a Consular Report of Birth Abroad, he was not granted a U.S. passport, and therefore ~~faces significant restrictions on his liberty, including his freedom~~he is treated differently from, and does not have the same rights as, a U.S. citizen, let alone a U.S. citizen at birth.  Among other things, the denial of L. Z.-B.'s application for a Consular Report of Birth Abroad, and the State Department's consequent refusal to recognize L. Z.-B. as a U.S. citizen, has restricted L. Z.-B.'s ability to ~~enter, travel through, or remain~~vote in U.S. elections in the ~~United States~~future, his eligibility for federal employment, and his ability to run for and hold elected office.  The State Department's policy also has deprived Allison of her right to transmit citizenship to L. Z.-B., which is among the most important rights and benefits available to a married U.S. citizen.  In light of ~~L███~~L. Z.-B.'s young age and dependence on his parents, these restrictions ~~impose~~inflict concrete harms on ~~L███~~L. Z.-B. and his family, as well as governmentally imposed diminutions of their fundamental protections and dignity, that are overwhelming and ongoing.  ~~For example, every time the Zaccari-Blixt family travels from London to visit Allison's family in North Carolina, the family must travel through the long line for non-citizens, and explain that L███ is not considered a citizen because he was conceived by Allison's wife instead of by Allison herself and is therefore viewed by the government as illegitimate.  Not only does this make traveling home more burdensome, it also exposes Allison, Stefania, and their young children to the pain and stigma of knowing that these burdens result from the State Department's refusal to recognize Allison's marriage to Stefania and parentage of L███.~~

17

65.   60. In light of these the discriminatory and other hardships concrete harms caused by

the Embassy's decision, Plaintiffs' counsel, on behalf of Allison and L█████ L. Z.-B., submitted a

letter to the Embassy on September 5, 2017 requesting reconsideration of its denial of L█████ L. Z.-

B.'s application for a Consular Report of Birth Abroad.  Counsel sought reconsideration on the

ground that the State Department had applied the incorrect statutory provision based on an

unconstitutional rationale that denies legal recognition to same-sex marriages.

66.   61. In a letter dated November 7, 2017, the Embassy responded, summarily stating

that it had "affirm[ed] that L█████ [L. Z.-B.] did not acquire U.S. citizenship at birth," and therefore

could not issue him a Consular Report of Birth Abroad.  (A copy of that letter is appended to this

Complaint at Exhibit E.)  The Embassy did not offer any explanation or reason for its affirmance.

### C.   The State Department Erroneously Deemed L█████ L. Z.-B. to Have Been Born "Out of Wedlock"

67.   62. As alleged herein, L█████ L. Z.-B. acquired U.S. citizenship at birth under Section

301(g) of the INA.  Pursuant to Section 301(g), a U.S. citizen at birth includes:

> a person born outside the geographical limits of the United States
> and its outlying possessions of parents, one of whom is an alien, and
> the other a citizen of the United States who, prior to the birth of such
> person, was physically present in the United States or its outlying
> possessions for a period or periods totaling not less than five years,
> at least two of which were after attaining the age of fourteen years.

68.   63. Because L█████ L. Z.-B. is not a child born out of wedlock, his citizenship status

is governed by Section 301(g).  L█████ L. Z.-B. clearly satisfies the criteria for U.S. citizenship at

birth under Section 301(g).  That is so because his mother, Allison, lived in the U.S. for most of

her life and clearly satisfies the statutory residence requirements of physical presence in the

U.S. United States for no less than five years, including at least two after turning fourteen years

old.

18

69. 64.The only way that L___ L. Z.-B. would not be a citizen at birth under the INA is if I___ he were a child born out of wedlock, as the State Department has deemed him.  That determination was erroneous both as a matter of statutory interpretation and as a matter of the Constitution's guarantees of due process and equal protection.

> **D.    The State Department's Policy Unconstitutionally Discriminates on the Basis of Sex and Sexual Orientation.**

70. 65.The decision to marry—like the decision to have children—is one of the most deeply personal choices one can make.  For the liberty guaranteed by the Constitution to be meaningful and effective, individuals must be able to make these fundamental and personal life choices freely, with dignity and without unwarranted consequences for the individual and his family.  Accordingly, the Constitution's guarantees of due process and equal protection apply with full force to an individual's fundamental right to marry the spouse of his or her own choosing, including a spouse of the same sex.  The Constitution requires not only recognition and protection of the right to enter into same-sex marriages, but also affords same-sex marriages the full constellation of legal rights and benefits—including dignity and respect—that have traditionally flowed from opposite-sex marriages.

71. 66.The State Department's policy and its application to L___ L. Z.-B. is unconstitutional because they violate L___ L. Z.-B.'s and Allison's rights to due process and equal protection under the Fifth Amendment of the Constitution.  As discussed above, the State Department refuses to apply Section 301(g) of the INA to L___ L. Z.-B. based on its erroneous and demeaning classification of him as a child born out of wedlock.  Apparently on that basis alone, it refuses to recognize L___ L. Z.-B.'s citizenship.

72. 67.Under the State Department's policy, citizenship through Section 301 is presumptively available to any person the State Department deems born "in wedlock"—a class the

19

agency has construed to consist almost exclusively of children conceived and carried by women who are married to men.

73. 68. Nothing in the INA or the Constitution permits the State Department's limitation of birthright citizenship under Section 301 to the children of U.S. citizens in opposite-sex marriages. The State Department's requirement is unfounded and ensures unconstitutionally unequal treatment of the children of married same-sexmarried couples.

74. 69. The government has provided no rationale for this discriminatory policy. Furthermore, there is no legitimate governmental purpose that could justify limiting birthright citizenship in this way. To the contrary, such an approach undermines the congressionally established, legitimate, and important government purposes that underlie the INA itself. For example, the State Department's approach ultimately makes it harder, not easier, for families like the Zaccari-Blixts to stay together. This undermines the INA's statutory intent of "provid[ing] for a liberal treatment of children and . . . keeping families of United States Citizens and Immigrants united." H.R. Rep. 85-1199, at 2020 (1957).

75. 70. In amending the INA, Congress recognized that no harm could come from the liberal treatment of children with respect to citizenship, and that the consequences of such treatment would fulfill "the clearly expressed legislative intention to keep together the family unit wherever possible." *Id.* at 2021.

76. 71. Although the State Department's policy may in theory apply to marriages between spouses of opposite sexes, its overwhelming effect is to deprive spouses inmarried same-sex marriagesspouses—and their children—of fundamental rights and equal dignity as citizens under the law. The fact that *some* married opposite-sexmarried couples *may* use assisted reproductive technology to conceive a child does not change the discriminatory nature or harmful

effects of the government's policy on same-sex couples, for whom such means are the only way to procreate.

77.   72.In addition to discriminating against L███L. Z.-B., the State Department's policy discriminates against Allison by denying her the ability to transmit citizenship to a child her wife conceived and carried during Allison's marriage.  This right is presumptively available to similarly situated parents who are men—*i.e.*, male U.S. citizens married to alien national women. Therefore, in denying Allison this right, the State Department's policy also discriminates against her based on her sex.

**COUNT I – DECLARATORY JUDGMENT**
**THE STATE DEPARTMENT'S POLICY VIOLATES THE DUE PROCESS**
**GUARANTEE OF THE FIFTH AMENDMENT.**

78.   73.Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 7277 as if fully set forth herein.

79.   74.The Fifth Amendment of the Constitution prohibits the federal government from depriving individuals of their rights without due process of law.

80.   75.The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of life, liberty, or property without due process of law, as well as from depriving any person of equal protection under the law.

81.   76.Section 301 of the INA entitles U.S. citizens to confer citizenship at birth on their children born abroad in wedlock.  The INA does not require U.S. citizens to be in opposite-sex marriages to confer citizenship under Section 301.  Nor does the INA require a child's biological parents to be married to each other for the child to be considered born in wedlock, and therefore eligible for citizenship under Section 301.  The INA merely requires that the child is *not* born out of wedlock.

82.   77. Defendants have violated and continue to violate the Fifth Amendment of the United States Constitution by enforcing a policy that excludes U.S. citizens in same-sex marriages from conferring citizenship pursuant to Section 301, while restricting access to citizenship under that provision to the children of married opposite-sexmarried couples.  Defendants' policy has deprived and continues to deprive Plaintiffs of their rights to acquire and confer citizenship at birth pursuant to INA Section 301.  As a result of Defendants' policy, Plaintiffs have suffered, and will suffer, irreparable harm to their protected interest in conferring, and having recognized, L████L. Z.-B.'s U.S. citizenship.

83.   78. There is no rational, legitimate, or substantial governmental interest served by denying the children of  married same-sexmarried couples access to citizenship at birth pursuant to Section 301 of the INA based on the sex and/or sexual orientation of the child's citizen-parent.  Nor is there any rational, legitimate, or substantial government interest served by denying married same-sex U.S. citizensin same-sex marriages the right to confer citizenship on children born abroad during their marriage based on the citizen's sex and/or sexual orientation or exercise of the protected right to enter into a same-sex marriage.  Defendants have offered no justification, either in their Letter, or in response to counsel's September 5, 2017 inquiry, for precluding Allison from conferring on L████L. Z.-B. citizenship pursuant to Section 301.

84.   79. As a result of Defendants' arbitrary, discriminatory, and unlawful implementation and enforcement of its policy prohibiting married same-sex U.S. citizensin same-sex marriages from conferring U.S. citizenship on their children born in wedlock outside the United States, Plaintiffs have suffered injuries and will suffer further irreparable harm to their constitutional rights under the Fifth Amendment if the State Department's policy is not declared unconstitutional and enjoined.

85.   80.Plaintiffs have no adequate remedy at law.

## COUNT II – DECLARATORY JUDGMENT
## THE STATE DEPARTMENT'S POLICY VIOLATES THE CONSTITUTIONAL
## GUARANTEE OF EQUAL PROTECTION UNDER THE LAW.

86.   81.Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 7277 as if fully set forth herein.

87.   82.The Due Process Clause of the Fifth Amendment prohibits the federal government from denying persons the equal protection of its laws.

88.   83.Under the State Department's interpretation of Sections 301 and 309, essentially no child could be considered born in wedlock to spouses ofsame-sex marriagesspouses, even if the child's parents are married to each other and are the sole individuals identified on the child's birth certificate as his or her parents.

89.   84.The State Department has offered no rationale, in either its initial Letter or in response to counsel's September 5, 2017, inquiry, to explain why it bars same-sex parents from relying upon Section 301.

90.   85.The State Department's interpretation has a disparate impact on married same-sex marriedcouples, because under that policy they can essentially never confer upon a child of such a couple U.S. citizenship pursuant to Section 301.

91.   86.Defendants' Letter, denying the application for a Consular Report of Birth Abroad by deeming L███ L. Z.-B. to be a child born out of wedlock, discriminates against L███ L. Z.-B. and Allison based on sex and sexual orientation, without lawful justification, in violation of the Equal Protection component of the Due Process Clause of the Fifth Amendment.

92.   87.Defendants' above-described discrimination against people who have an intimate relationship with a partner of the same sex—a discrete and insular group with a long

history of discrimination and degradation including by those acting under the color of law—does not advance any rational, legitimate, or substantial governmental interest.

93. 88.As a result of Defendants' implementation and enforcement of its discriminatory policy of excluding the children of married same-sexmarried couples from qualifying for citizenship at birth as children born in wedlock outside the United States, Plaintiffs have suffered injuries and will suffer further irreparable harm to their constitutional rights under the Fifth Amendment if the State Department's policy is not declared unconstitutional and enjoined.

94. 89.Plaintiffs have no adequate remedy at law.

**COUNT III – ADMINISTRATIVE PROCEDURE ACTDECLARATION THAT L. Z.-B. IS A U.S. CITIZEN**

95. 90.Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 7277 as if fully set forth herein.

96. 91. Plaintiffs have suffered a "legal wrong because of agency action." 5 U.S.C. § 702.

92. The Administrative Procedure Act bars any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

93. Defendants' interpretation of Sections 301 and 309, as embodied in the FAM, conflicts with the clear language and statutory purpose of the INA. This interpretation, published without any public comment, is arbitrary, capricious, and not in accordance with the INA.

94. Plaintiffs have suffered and continue to suffer legal wrongs because of the U.S. Embassy's decision to deny the Consular Report of Birth Abroad application submitted on behalf of L██.

95. Plaintiffs have exhausted all administrative remedies available to them as of right.

24

96.     ~~Plaintiffs have no other recourse to judicial review other than this action.~~

97.     ~~Defendants' exclusion of children born abroad in same-sex marriages from the category of children who qualify for citizenship at birth as born to valid marriages lacks a rational basis, is arbitrary, and is contrary to~~8 U.S.C. § 1503(a) authorizes this Court to make a *de novo* determination of the citizenship status of L. Z.-B.

97.     Allison is a U.S. citizen, who was born in the United States and was physically present in the United States for a period of more than twenty-nine years, starting from the time she was born in Illinois in 1978 until the time she moved to London, England in 2008.

98.     In 2009, Allison and Stefania entered into a civil partnership in England.   On January 3, 2015, they retroactively converted their civil partnership to a valid marriage following the legalization of same-sex marriage in England.

99.     L. Z.-B. was born in London, England on ███████ 2015, during Allison's marriage to Stefania.

100.    Allison and Stefania are L. Z.-B.'s parents.   They are recognized as L. Z.-B.'s parents on his birth certificate and recognized as his parents under English law.

101.    ~~98. Plaintiffs have no adequate remedy at law.~~Section 301(g) of the INA is applicable to L. Z.-B.'s citizenship claim because L. Z.-B. is the child of parents who were married to each other at the time of his birth, and one of L. Z.-B.'s parents is a U.S. citizen.  Section 309(a) of the INA is inapplicable to L. Z.-B.'s citizenship claim because he is the child of married parents and was born during their marriage to each other, and therefore is not a child born out of wedlock.

102.    L. Z.-B. is a U.S. citizen at birth pursuant to Section 301(g) because he was born: (1) outside the geographical limits of the United States and its outlying possessions, (2) to parents one of whom is an alien, and the other a citizen of the United States, (3) to a parent who, prior to

the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after that parent attained the age of fourteen years.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court:

i.      Declare unconstitutional, and a violation of the INA, the State Department's policy of classifying the children of ~~married~~ same-sex ~~married~~couples as "children born out of wedlock," and its consequent refusal to recognize ~~L~~████ L. Z.-B.'s citizenship status on that basis, both on its face and as applied to Plaintiffs, Allison Dawn Blixt, in her individual capacity, and on behalf of her son, ~~L~~████ ~~A~~████ ~~Z~~████ ~~-B~~████ L. Z.-B.;

ii.     Declare ~~L~~████ ~~A~~████ ~~Z~~████ ~~-B~~████ L. Z.-B. to be a U.S. citizen at birth;

iii.    Permanently enjoin Defendants from continuing to discriminate against Plaintiffs by classifying the children of married same-sex~~married~~ couples as "children born out of wedlock," and denying the children of married same-sex~~married~~ couples the right to acquire citizenship at birth pursuant to Section 301(g) on that basis; and

iv.     Award Plaintiffs attorneys' fees and costs as allowed by law, and such other relief as the Court deems just and proper, including an award of reasonable litigation costs incurred in this proceeding pursuant to 28 U.S.C. § 2412.

Dated:   ~~Washington, D.C.~~
———New York, New York
April 13, ~~2018~~2020

IMMIGRATION EQUALITY

 /s/ Aaron C. Morris
Aaron C. Morris (*amorris@immigrationequality.org*)
40 Exchange Place
Suite 1300
New York, New York 10005-2744
(212) 714-2904

SULLIVAN & CROMWELL LLP

Elizabeth A. Cassady (*cassadye*
 /s/ Mark A. Makar
Mark A. Makar (N.J. Bar No. 244882017) (*makarm*@sullcrom
1700 New York Avenue, NW, Suite 700
Washington, D.C., 20006-5215
(202) 956-7500

Theodore Edelman  (*edelmant@sullcrom.com*)
Jessica M. Klein (*kleinj@sullcrom.com*)
ScottLauren EM. Blair (*blairs*Goldsmith (*goldsmithl*@sullcrom
Alexandra H. Moss (*mossa@sullcrom.com*)

125 Broad Street
New York, New York 10004-2498
(212) 558-4000

 -and-

IMMIGRATION EQUALITY

_____

Aaron C. Morris (*amorris@immigrationequality.org*)
40 Exchange Place

Elizabeth A. Cassady (*cassadye@sullcrom.com*)
1700 New York Avenue, NW, Suite 1300700
New York, New York 10005-2744
(212) 714-2904
Washington, D.C., 20006-5215
(202) 956-7500

*Attorneys for Plaintiffs*

**Exhibit A**

*Appendix* A and the CA Internet page on DNA and Parentage Testing. See 7 FAM 1160 *Appendix E* for further guidance on adjudication.

> **NOTE**:
>
> CA/FPPs CAWeb Intranet Relationship Fraud feature.
>
> CA/FPPs Intranet Fraud Digest includes other information about relationship fraud. For example: Relationship Fraud in Yemen; Marriage Fraud Dangerous and Pervasive.

# 7 FAM *1140 APPENDIX E* IN WEDLOCK AND OF WEDLOCK

*(CT:CON-521; 07-08-2014)*

a. The term Birth in Wedlock has been consistently interpreted to mean birth during the marriage of the biological parents to each other.

b. This includes a child conceived before the marriage but born during the marriage.

c. To say a child was born "in wedlock" means that the childs biological parents were married to each other at the time of the birth of the child.

d. In the case of a marriage terminated by dissolution, death, or annulment, the term of wedlock still includes a biological child conceived during the marriage and born within 300 days after termination of the marriage.

*e*. If a married woman and someone other than her spouse have a biological child together, that child is considered to have been born out of wedlock. The same is true for a child born to a married man and a person other than his spouse.

# 7 FAM 1150 *APPENDIX E* VOID AND VOIDABLE MARRIAGES

*(CT:CON-576; 05-05-2015)*

a. A marriage that does not conform to the laws of the country or state in which it was performed generally is voidable and may be declared void by an appropriate authority, usually a court in the jurisdiction where the marriage occurred.

b. Prior to such a declaration, the marriage usually is considered valid for all purposes. Even after a marriage is voided, the children's status usually is not affected. In the United States, for example, every state considers children of a void marriage to be legitimate.

**Exhibit B**

Case 1:18-cv-00124-EGS  Document 1-2  Filed 01/22/18  Page 2 of 3

RTAA 017907

M. Cert.
S.R./ R.B.D.& M

CAUTION:  There are offences relating to falsifying or altering a certificate
and using or possessing a false certificate. ©Crown copyright

WARNING: A CERTIFICATE IS
NOT EVIDENCE OF IDENTITY

# CERTIFIED COPY OF AN  ENTRY OF MARRIAGE

**Registration District Wandsworth**

## 2015  Marriage registered at Wandsworth Register Office  in the District of Wandsworth
### in the London Borough of Wandsworth

| Columns:- 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|
| When married* | Name and surname | Age | Condition | Rank or profession | Residence at the time of marriage | Father's name and surname | Rank or profession of father |
| 9 July 2009 | Stefania ZACCARI | 40 years | Civil Partner | Market Research Manager | London SW16 2TY | Pietro ZACCARI (deceased) | Assembler Worker (retired) |
| | Allison Dawn BLIXT | 36 years | Civil Partner | Lawyer | London SW16 2TY | Charles Allen BLIXT | Lawyer (retired) |

*The above marriage was converted from a civil partnership on 3 January 2015 and the details recorded in columns 2 to 8 are as stated on that date.  By section 9(6) of the Marriage (Same Sex Couples) Act 2013 (subject to any contrary provision made by or under that Act for any particular purpose) the marriage is to be treated as having subsisted since the date in column 1, on which the civil partnership was formed.

Signature of parties married

Stefania Zaccari             Allison Blixt

In the presence of

K A Jones
Deputy Superintendent Registrar

Certified to be a true copy of an entry in the Conversion Register ......................  K. A. Jones. Deputy Superintendent Registrar

Date ...3 . 1. '15..

System No: 511337007

Case 1:18-cv-00124-EGS Document 1-2 Filed 01/22/18 Page 3 of 3
Case 2:20-cv-02102-KM-JBC Document 53-3 Filed 04/13/20 Page 35 of 41 PageID: 143
CPP0800049

## CERTIFIED COPY OF AN ENTRY OF CIVIL PARTNERSHIP
## Pursuant to the Civil Partnership Act 2004

| CIVIL PARTNERSHIP | | |
|---|---|---|
| Civil partnership registered in the Registration Authority of **The City of Westminster** | | Entry No. **501864311** |
| 1. Date and place of civil partnership registration | **Ninth July 2009** **The Old Marylebone Town Hall** **Westminster Council House** **Marylebone Road** **London** | |
| 2. Name and surname | **Stefania ZACCARI** | **Allison Dawn BLIXT** |
| 3. Date of birth | ▮ 1974 | ▮ 1978 |
| 4. Sex | **Female** | **Female** |
| 5. Condition | **Single** | **Single** |
| 6. Occupation | ------------------------------- | **Lawyer** |
| 7. Residence at time of civil partnership registration | **Flat H, 17 Park Road, London, NW1 6XN** | **Flat H, 17 Park Road, London, NW1 6XN** |
| 8. Father's name, surname and occupation | **Pietro ZACCARI [deceased] Assembler Worker [retired]** | **Charles Allen BLIXT Lawyer [retired]** |
| 9. Mother's name, surname and occupation | **Severina POLLETTA Seamstress [retired]** | **Leslie Joan BLIXT Social Worker [retired]** |
| 10. Civil partner's signature | **Stefania Zaccari** | **Allison Blixt** |
| 11. Name and surname of witnesses | **Lindsey DAWSON** | |
| | **Chad SNELGAR** | |
| 12. Civil partnership registrar's signature | **K E Merritt** | |

Certified to be a true copy of an entry in the Civil Partnership Register.

on behalf of _The City of Westminster_ Registration Authority.

Date _9th July 2009_

CAUTION: THERE ARE OFFENCES RELATING TO FALSIFYING OR ALTERING A CERTIFICATE AND USING OR POSSESSING A FALSE CERTIFICATE ©CROWN COPYRIGHT

**WARNING: A CERTIFICATE IS NOT EVIDENCE OF IDENTITY**

**Exhibit C**



BBF 077729

# CERTIFIED COPY
## Pursuant to the Births and

# OF AN ENTRY
## Deaths Registration Act 1953

| **BIRTH** | | Entry No. 20 |
|---|---|---|
| **Registration district** Lambeth | | **Administrative area** |
| **Sub-district** Lambeth | | London Borough of Lambeth |

| | **CHILD** | |
|---|---|---|
| 1. **Date and place of birth** ██████ 2015 St Thomas' Hospital Lambeth | | |

| 2. **Name and surname** L██ A████ Z██████-B████ | | 3. **Sex** Male |
|---|---|---|

| | **PARENT** |
|---|---|
| 4. **Name and surname** Allison Dawn BLIXT | |

| 5. **Place of birth** United States of America | 6. **Occupation** Learning and Development Manager |
|---|---|

| | **MOTHER** |
|---|---|
| 7. **Name and surname** Stefania ZACCARI | |

| 8.(a) **Place of birth** Italy | 8. (b) **Occupation** Market Researcher |
|---|---|
| 9.(a) **Maiden surname** ZACCARI | 9. (b) **Surname at marriage if different from maiden surname** _____ |

| 10. **Usual address (if different from place of child's birth)** ██████████ | |
|---|---|

| | **INFORMANT** | |
|---|---|---|
| 11. **Name and surname (if not the mother or parent)** _____ | | 12. **Qualification** Mother |

| 13. **Usual address (if different from that in 10 above)** _____ | |
|---|---|

| 14. **I certify that the particulars entered above are true to the best of my knowledge and belief** Stefania Zaccari | **Signature of informant** |
|---|---|

| 15. **Date of registration** Twenty-seventh February 2015 | 16. **Signature of registrar** C Spence Deputy Registrar |
|---|---|

| 17. **Name given after registration, and surname** _____ | |
|---|---|

_____

Certified to be a true copy of an entry in a register in my custody.

............... Spee { Deputy

*Superintendent Registrar
*Registrar

*Strike out whichever does not apply

Date 27th February 2015

System No. 511654977

CAUTION: THERE ARE OFFENCES RELATING TO FALSIFYING OR ALTERING A CERTIFICATE AND USING OR POSSESSING A FALSE CERTIFICATE. ©CROWN COPYRIGHT

**WARNING: A CERTIFICATE IS NOT EVIDENCE OF IDENTITY.**

**Exhibit D**

*Embassy of the United States of America*

Passport & Citizenship Unit
24 Grosvenor Square
London
W1K 6AH

May 24, 2017

Dear Ms. Allison Dawn Blixt,

This letter is in reference to the Consular Report of Birth Abroad application submitted at the U.S. Embassy, London, on May 23, 2017, regarding the possible claim to United States citizenship of L█████ A████████ Z██████-B██, born on ████████ 2015, in London, United Kingdom.

In order for your child to have acquired United States citizenship at birth, the U.S. citizen parent(s) would have had to have fulfilled the relevant requirements of the Immigration and Nationality Act (INA) as made applicable to your circumstances. Please see our website for further information: https://uk.usembassy.gov/u-s-citizen-services/birth/transition-requirements/.

The requirements relevant to your circumstances are as follows:

- At least one of the parents was a U.S. citizen at time of child's birth;
- The biological relationship be established between the U.S. citizen mother and child, through either a genetic parental relationship or a gestational relationship;
- The U.S. citizen parent was able to show evidence that they met the physical presence requirements of Section 309(c) of the INA;

In view of the above, it does not appear that your child has a claim to U.S. citizenship. It has been determined that there is not a biological relationship be established between the U.S. citizen mother and child, through either a genetic parental relationship or a gestational relationship, as required under the provisions of section 309(c) of the Immigration and Nationality Act. Therefore, your application is denied.

If you require additional information, you may contact the U.S. Citizenship and Immigration Services (USCIS) regarding your child's citizenship status. Their website is www.uscis.gov.

Any original supporting documents submitted as part of the application are enclosed. By law, the application fees are non-refundable.

Sincerely,

**Exhibit E**



*Embassy of the United States of America*

November 7, 2017

Theodore Edelman
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004-2498

Dear Mr. Edelman:

Thank you for your letter to Ambassador Johnson dated September 5, 2017, on behalf of your clients, L███ A██████ Z████-B███ and his parents, Allison Blixt and Stefania Zaccari. The Ambassador has asked me to respond to your inquiry.

The Department of State has given careful attention to your request for reconsideration and reversal of the Embassy's May 24, 2017, denial of the application for a Consular Report of Birth of a U.S. Citizen Abroad (CRBA). The Department affirms that L███ did not acquire U.S. citizenship at birth, and therefore we are unable to issue him a CRBA.

Please be advised that L███ may be able to pursue other paths to citizenship. Information is available on the website of United States Citizenship and Immigration Services at www.uscis.gov/us-citizenship/citizenship-through-naturalization. Other avenues are set forth in Section 1503 of Title 8 of the U.S. Code.

Sincerely,

Ronald S. Packowitz
Chief, American Citizen Services
U.S. Embassy, London